# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

LAMAR LENOIR,

                         :

        Petitioner,                          Case No. 3:09-cv-286

                                     District Judge Walter H. Rice

     -vs-                   :         Magistrate Judge Michael J. Newman

WARDEN PHILLIP KERNS,

        Respondent.               :

---

## REPORT AND RECOMMENDATION[1]

---

       Pursuant to 28 U.S.C. § 2254, Petitioner Lamar Lenoir ("Petitioner" or "Lenoir") brings this petition for a writ of *habeas corpus*. In the Montgomery County Court of Common Pleas, he was convicted of murder with a firearm specification. Proceeding *pro se*, Lenoir pleads five grounds for relief:

       **GROUND ONE**: The Petitioner was denied his right to a fair trial when the State of Ohio used false testimony to obtain the conviction of the Petitioner in violation of Due Process under the Fourteenth Amendment of the U.S. Constitution, and the State decided his appeals contrary to <u>Napue v. Illinois</u>, <u>Giglio v. U.S.</u>, and <u>Miller v. Pates</u>.

       **GROUND TWO**: The Petitioner was denied his right to a fair trial due to ineffective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments of the U.S. Constitution, and the state court adjudication of the claim resulted in a decision that involved an unreasonable application of <u>Strickland v. Washington</u>, and an unreasonable determination of the facts in light of the record.

---

[1]Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

**GROUND THREE**: The Petitioner suffered substantial prejudice to his defense and right to a fair trial as a result of the pre-indictment delay that the State intentionally used to gain a tactical advantage for which it had no justifiable valid reason for delay, in violation of his due process rights under the Fourteenth Amendment of the U.S. Constitution, and when the State of Ohio decided his appeal on this ground, it unreasonably applied U.S. v. Lovasco and U.S. v. Marion to the facts of this case.

**GROUND FOUR**: The Petitioner was denied the effective assistance of appellate counsel in violation of the Sixth Amendment of the U.S. Constitution when appellate counsel omitted a claim of ineffective assistance of trial counsel in his direct appeal he did for Petitioner, and counsel improperly argued an pre-indictment delay issue on the direct appeal, and when the State of Ohio court decided his application on this matter, it unreasonably applied Strickland v. Washington and Mapes v. Coyle to the facts of the case.

**GROUND FIVE**: The Petitioner's substantial rights to a fair trial were denied him resulting in a creation of a miscarriage of justice and was fundamentally unfair in violation of the 5th, 6th, and 14th Amendments of the U.S. Constitution, contributed to by the actions of the ineffectiveness of trial and appellate counsel and their conspired efforts with the prosecutor to not disclose the perjury in this case that caused his conviction which the state courts affirmed and adversely ruled throughout the proceedings of this case, and in so doing unreasonably applied clearly established federal law and an unreasonable determination of the facts.

(Doc. 2).[2]

# I. PROCEDURAL HISTORY

In February 1994, Lenoir was arrested for the murder of a woman, Patty Davis -- that occurred outside a Frisch's restaurant in Harrison Township, Ohio on February 13, 1994 -- but the charges were dropped one week later. (*See* doc. 11-1, at PAGEID 420-21.) On December 20, 2005, over eleven years later, Lenior was indicted for the murder of Patty Davis. (*Id.* at PAGEID 351.) Lenoir moved to dismiss the charges for speedy trial and due process violations. (*Id.* at PAGEID 353-61, 405-07.) However, the trial court overruled his motions to dismiss and set the case for trial.

---

[2]Because the Petitioner's supporting facts for each ground for relief are lengthy, the Court will analyze the facts below.

(*Id.* at PAGEID 416-31.)

The jury found Lenoir guilty of murder and a firearm specification. (*Id.* at PAGEID 432-34.) Lenoir moved for a new trial, arguing prosecutorial misconduct, ineffective assistance of counsel, and newly discovered evidence. (*Id.* at PAGEID 435-38, 449-62.) After denying his post-trial motions, the court sentenced Lenoir to eighteen years to life imprisonment. (*Id.* at PAGEID 494-97.)

## A.  Direct Appeal

With the assistance of counsel, Lenoir timely appealed his conviction and sentence, raising eight assignments of error:

I.      The three year sentence for the firearm specification should be reversed because Appellant was convicted of a specification for which the penalty is one, and not three, years.

II.     The trial court denied Appellant a fair trial as guaranteed by the state and federal constitutions when it let the prosecution present evidence that Appellant had committed other criminal acts.

III.    Trial counsel was ineffective under the Sixth Amendment of the Constitution for failing to adequately object to the "other acts" evidence.

IV.     The prosecution committed misconduct and denied Appellant a fair trial, as guaranteed by the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and Article I, Section Ten of the Ohio Constitution.

V.      Trial counsel was ineffective under the Sixth Amendment of the Constitution for failing to object to the misconduct.

VI.     The conviction should be reversed as against the manifest weight of the evidence.

VII.    Because of the eleven year delay between the reporting of the offenses and the indictment, and because the defense was prejudiced by the delay, the trial court denied Appellant due process of law under the state and federal constitutions when it denied the motion to dismiss the indictment.

VIII.   Even if the previous assignments of error when considered individually do not mandate reversal, the cumulative effect of those errors should cause this court to reverse the conviction.

(*Id.* at PAGEID 500-41) (capitalization altered). The Ohio Court of Appeals overruled all of the assignments of error, affirming his conviction and sentence. (*Id.* at PAGEID 627-46.)

Lenoir timely appealed the Court of Appeals' decision to the Ohio Supreme Court, asserting three propositions of law:

I.   In a murder prosecution where a defendant is accused of one offense on a particular day, the admission of evidence concerning his extensive gang-related drug dealing, his threat to murder other people, and his brutal assault on a girlfriend, were so prejudicial so as to deny the defendant a fair trial, particularly in light of the fact that the jury was not instructed how to use this "other acts" evidence.

II.   In a murder trial where the main prosecution evidence comes from a compatriot of the defendant who hoped to curry favor from authorities by testifying, a prosecutor's misconduct in closing argument can suffice to deny that defendant due process under the state and federal constitution.

III.   An eleven year delay between the reporting of the offenses and the indictment is a sufficient ground[] for dismissing an indictment when the defendant demonstrates that he or she was prejudiced by the delay.

(*Id.* at PAGEID 670-89) (capitalization altered). The Ohio Supreme Court declined to hear the appeal, finding it did not involve any substantial constitutional question. (Doc. 11-2, at PAGED 710.)

## B. Post-Conviction Petition

While his direct appeal was pending, Lenoir filed a post-conviction petition, arguing: (1) statements made during closing arguments rose to the level of prosecutorial misconduct; (2) ineffective assistance of trial counsel; and (3) newly discovered evidence, which impeached the key State witnesses' testimony. (*Id.* at PAGEID 961-81.) Finding that his prosecutorial misconduct and

ineffective assistance of counsel claims were meritless, and his newly discovered evidence claim was barred by *res judicata*, the trial court dismissed Lenoir's post-conviction petition. *State v. Lenoir*, No. 2005 CR 3027 (Montgomery Cnty. Ct. Com. Pl. Aug. 4, 2008); (*Id.* at PAGEID 1004-30).

Lenoir then appealed the denial of his post-conviction petition, arguing that the trial court erred by failing to grant him an evidentiary hearing. (*Id.* at PAGEID 1062-71.) The Court of Appeals affirmed the trial court's judgment. *State v. Lenoir*, No. 22893 (Ohio Ct. App. Mar. 13, 2009); (Doc. 11-2, at PAGEID 1090-94). Lenoir further appealed to the Ohio Supreme Court, but it declined to hear his case. *State v. Lenoir*, No. 2009-0758 (Ohio Sept. 16, 2009); (Doc. 11-2, at PAGEID 1120).

### C. Application to Re-Open Appeal

In June 2008, Lenoir timely filed a *pro se* application to re-open his appeal pursuant to Ohio Rule of Appellate Procedure 26(B), asserting that his appellate counsel was ineffective for failing to assert the following two claims on appeal:

I. Appellant was denied the effective assistance of trial counsel when she failed to subject the State's case to adversarial testing by not using available witness statements and crime scene photographs/diagram and calling rebuttal witnesses, all of which would have impeached the credibility and veracity of the State witnesses whose testimony was relied upon to convict Appellant, and this omission by trial counsel resulted in prejudice to the defense and deprived the Appellant of a fair trial, because had this evidence been used for cross-examination, there is a reasonable probability the jury would have a reasonable doubt respecting the guilt of Appellant.

II. Appellant was denied due process in being subject to unjustifiable pre-indictment delay which prejudiced the defense and caused an unfair trial.

(Doc. 11-2, at PAGEID 711-22.) The Court of Appeals denied Lenoir's application to re-open his appeal. *State v. Lenoir*, No. 22239 (Ohio Ct. App. Aug. 27, 2008); (Doc. 11-2, at PAGEID 926-30).

Lenoir appealed the Court of Appeals' judgment to the Ohio Supreme Court (doc. 11-2 at PAGEID 931-58), which declined to hear the case as not involving a substantial constitutional question. *State v. Lenoir*, No. 2008-1911 (Ohio Jan. 15, 2009); (Doc. 11-2, at PAGEID 960).

## II. ANALYSIS

### A. AEDPA Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when the state court has decided a federal constitutional claim on the merits, the federal *habeas* court must defer to the state court decision unless: (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court"; or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

A state court decision is considered "contrary to . . . clearly established Federal law" when it is "diametrically different, opposite in character or nature, or mutually opposed." *Nields v. Bradshaw*, 482 F.3d 442, 449 (6th Cir. 2007) (citation omitted). To be deemed "an unreasonable application of . . . clearly established Federal law," a state court's decision must be "'objectively unreasonable,' not simply erroneous or incorrect." *Cornwell v. Bradshaw*, 559 F.3d 398, 405 (6th Cir. 2009*)* (citation omitted). Further, under 28 U.S.C. § 2254(e)(1), a state court's factual findings are presumed correct unless the petitioner rebuts them by clear and convincing evidence. *Id.* This statutory presumption of correctness also extends to factual findings made by state appellate courts' review of trial court records. *Mason v. Mitchell,* 320 F.3d 604, 614 (6th Cir. 2003).

A *habeas* court cannot review a constitutional claim on the merits unless the petitioner previously presented the claim to the state's highest court. *O'Sullivan v. Boerckel,* 526 U.S. 838,

844-45, 848 (1999).  Thus, if (1) the state court rejected the petitioner's claim based on his or her failure to comply with the state procedural rules, or (2) the petitioner failed to exhaust his state court remedies and no avenue of relief remains open, or it would otherwise be futile to pursue the state remedies, the petitioner has waived that claim for *habeas* review under the procedural default doctrine.  *In re Abdur'Rahman*, 392 F.3d 174, 186-87 (6th Cir. 2004) (overruled on other grounds).

## B.  Ground One

In Ground One, Lenoir asserts prosecutorial misconduct.  Specifically, he contends that three of the State's key witnesses committed perjury, and the prosecutor knew or should have known their testimony was false.  First, Lenoir claims that Kirby Peterson's testimony -- that he was standing in the vestibule and witnessed Lenoir shoot the victim -- was false.  In support of his argument, he points to the following evidence:  (1) in his original statement to the police, Peterson did not provide any information about the identity of the shooter; (2) even though Peterson had dripped blood all over the restaurant as a result of a gunshot wound to his hand,[3] there was no trace of his blood in the vestibule; and (3) four disinterested witnesses recounted that Peterson was sitting at the counter when the murder occurred.

Second, he contends that Aisha Hunter Whaley's testimony -- that she witnessed Lenoir shoot the victim -- was false.  He argues that the following circumstances support his claim: (1) she did not identify him as the shooter in her original statement to police; (2) her claim is nearly identical to Peterson's -- indicating that they conspired together; (3) disinterested witnesses contradicted her account of events; and (4) she could not have viewed the shooting from where she

---

[3]Kirby Peterson was accidentally shot in the hand during a fight that occurred inside the restaurant, immediately before Patty Davis was shot.

alleged to have been sitting.

Third, he asserts that Latonia Adkins' testimony -- that Lenoir indirectly confessed to the murder -- was false. Specifically, Adkins testified that while Lenoir was physically assaulting her in 2001, he threatened to kill her "like he killed the bitch at Frisch's." (Doc. 31-3, at PAGEID 1610.) Adkins reported this to the police that responded to the scene. (*Id.* at PAGEID 1638.) However, in the assault case against Lenoir, Adkins did not testify about the statement, claiming that the prosecutor advised her not to. (*Id.* at PAGEID 1620-21.) Thus, Lenoir argues, the fact that Adkins failed to mention the statement in the assault case indicates that she fabricated the statement.

The State asserts that Ground One is procedurally defaulted because Lenoir never raised this claim in his state proceedings. To preserve a federal constitutional claim for *habeas corpus*, the legal and factual basis of the claim must be "fairly presented" to the state courts so that they have an opportunity to remedy the alleged constitutional violation. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006). A petitioner must have presented his claims to the state courts "under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). If a *habeas* petitioner fails to properly raise the claim in state court, and state law no longer allows him to raise it, the claim is procedurally defaulted. *Williams,* 460 F.3d at 806.

Here, Lenoir did not fairly present Ground One to the state courts on direct appeal or in his post-conviction petition. Although he raised prosecutorial misconduct claims in those proceedings, they were premised on different facts there: he argued that the prosecutor improperly presented "other bad acts" evidence and the prosecutor's statements during closing argument amounted to misconduct. (Doc. 11-1, at PAGEID 500-41; Doc. 11-2, at PAGEID 961-81.)

Further, a Rule 26(B) application, raising ineffective assistance of appellate counsel, does not preserve the underlying claims for federal *habeas* review. *Davie v. Mitchell*, 547 F.3d 297, 311-12 (6th Cir. 2008). Accordingly, even though Lenoir raised his Ground One argument as underlying claims in his 26(B) application, Ground One is still procedurally defaulted. *See id.*

Therefore, Ground One is procedurally barred unless Lenoir "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To meet the "cause" prong, a *habeas* petitioner must "show that some objective factor external to the defense" caused his failure to comply with the state's procedural rule, *Murray v. Carrier*, 477 U.S. 478, 488 (1986), and if a petitioner fails to do so, a court does not need to consider the prejudice prong. *Smith v. Murray*, 477 U.S. 527, 533-34 (1986).

As Lenoir argues in his Traverse, attorney error amounting to ineffective assistance of counsel can constitute cause to excuse a procedural default. *See Murray*, 477 U.S. at 488. However, the exhaustion doctrine "generally requires that a claim of ineffective assistance of counsel be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default in federal *habeas* proceedings." *Id.* at 489.

In his 26(B) application filed with the Court of Appeals, Lenoir did not specifically argue that his appellate counsel was ineffective for failing to raise prosecutorial misconduct on appeal. Instead, Lenoir only raised two sub-claims: his appellate counsel was ineffective for (1) failing to bring an ineffective assistance of trial counsel claim on appeal; and (2) failing to argue that the pre-indictment delay violated his due process rights on appeal. (Doc. 11-2, at PAGEID 711-22.) Thus, he did not independently present his prosecutorial misconduct sub-claim to the state courts. Because

it would be futile for Lenoir to bring a successive 26(B) application now, *see State v. Twyford*, 833 N.E.2d 289, 290 (Ohio 2005), his ineffective assistance of appellate counsel claim is procedurally defaulted. Therefore, it cannot serve as cause for his procedural fault. *See Murray*, 477 U.S. at 488.

Lenoir's only other option to excuse his procedural default is to show that it would be a miscarriage of justice to refuse to hear his claim on the merits, or in other words, Lenoir must present evidence that he is actually innocent. *See Schlup v. Delo*, 513 U.S. 298, 320-22 (1995). To meet this standard, a petitioner must "persuade[] the district court that, *in light of the new evidence*, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329 (emphasis added). The actual innocence exception to the procedural default doctrine "requires 'new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.'" *House v. Bell*, 547 U.S. 518, 537 (2006) (quoting *Schlup*, 513 U.S. at 324). "A prototypical example of 'actual innocence' in a colloquial sense is the case where the State has convicted the wrong person of the crime." *Sawyer v. Whitley*, 505 U.S. 333, 340 (1992).

Here, Lenoir's actual innocence claim fails because he has not presented any "new" evidence. All of the evidence he submitted with his *habeas* petition was available to him at trial. Likewise, Lenoir's own factual statements are not "new" evidence because Lenoir could have testified to those facts at trial. Further, even if some of the evidence could be considered "new," it still would not show that he is actually innocent. Lenoir has only submitted evidence that discredits the eyewitnesses' testimony. This does not serve as proof of his actual innocence. Therefore, Lenoir has not overcome the procedural default of Ground One through the actual innocence exception either. Accordingly, Ground One should be dismissed.

Alternatively, even if this claim were preserved, it would not warrant *habeas corpus* relief. A defendant's due process rights are violated when the prosecutor knowingly suborns perjury to obtain a conviction, and "there is a reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989). To prove that the prosecutor engaged in such conduct, the defendant must demonstrate that the testimony referred to was actually false, it was material, and the prosecutor knew it was false. *Id.* Further, the statement must be "indisputably false," rather than simply misleading. *Id.* at 823.

Lenoir's prosecutorial misconduct claim fails in two respects. First, Lenoir has failed to demonstrate that the State's witnesses' testimony was "indisputably false." Rather, he merely cites to the long delay between the murder and the witnesses' statements, the discrepancies between the witnesses' prior statements and their trial testimony, the inconsistencies with the statements of other witnesses who were at the scene of the shooting, and some physical evidence. These facts, however, go to the credibility of the witnesses, which is properly left for the jury to resolve. *Caldwell v. Russell*, 181 F.3d 731, 738 (6th Cir. 1999). Second, even if the witnesses had, in fact, falsely testified, Lenoir has not shown how the prosecutor knew it was false testimony.

Lenoir cites to several Supreme Court cases in support of Ground One: *Napue v. Illinois*, 360 U.S. 264 (1959); *Giglio v. United States*, 405 U.S. 150 (1972); and *Miller v. Pate*, 386 U.S. 1 (1967). However, those cases are factually distinguishable. In *Napue* and *Giglio*, a witness falsely testified that the prosecution had not promised him anything in return for testifying at trial, and the prosecutor, knowing it was false, did nothing to correct the witness's statement. *Napue*, 360 U.S. at 265; *Giglio*, 405 U.S. at 151-53. In *Miller*, the prosecutor knowingly presented fabricated physical evidence. *Miller*, 386 U.S. at 2-6.

Here, Lenoir argues that Kirby Peterson and Aisha Whatley testified in return for prosecutorial leniency. In contrast to *Napue* and *Giglio* though, Kirby Peterson admitted on cross-examination that, in return for testifying, the state prosecutor promised to inform the federal prosecutor in Georgia that Peterson had cooperated in Lenoir's case and to request that Peterson's federal sentence be reduced.[4] (*See* doc. 31-4, at PAGEID 1827-37.) In addition, Lenoir argues that Whaley "may have been seeking a deal from the prosecutor" because she had criminal charges against her in 2005. However, Lenoir has not submitted any proof that she was, in fact, promised anything from the prosecution in return for testifying against him. Therefore, given the lack of evidence that the prosecution knew any false evidence was presented, the facts in Lenoir's case are distinguishable from those in the Supreme Court cases he cited. Accordingly, in the alternative, Ground One fails on the merits and should be dismissed.

## C. Ground Two

In Ground Two, Lenoir argues ineffective assistance of trial counsel based on his attorney's failure to properly cross-examine the State's witnesses. Again, the State contends that Ground Two is procedurally defaulted. Recognizing that Lenoir raised this claim in his post-conviction petition, the State argues that Ground Two is nonetheless procedurally defaulted because he failed to appeal these issues to the Court of Appeals and the Ohio Supreme Court. Specifically, the State argues, Lenoir's sole issue on appeal of his post-conviction petition was that it was error to dismiss his petition without first conducting a hearing.

---

[4]The Georgia federal prosecutor refused to reduce Peterson's sentence in return for his testimony at Lenoir's trial. (Doc. 4-17, at PAGEID 173.)

Having reviewed Lenoir's briefs in his post-conviction appeals, the Court agrees that Lenoir has not exhausted Ground Two. (*See* doc. 11-2, at PAGEID 1062-71, 1104-12.) A claim is not exhausted if it was not fairly presented to the state courts at each stage of the state appellate process. *O'Sullivan*, 526 U.S. at 847-48. The sole claim in Lenoir's appellate brief was that the trial court erred by failing to grant him an evidentiary hearing. Thus, instead of citing to case law supporting his ineffective assistance of counsel claim, Lenoir cites to the relevant statutory and case law governing the standard for granting an evidentiary hearing for post-conviction petitions. While Lenoir was not required to cite "chapter and verse" of the appropriate constitutional law, he simply failed to present the same factual and legal posture that he now alleges in his *habeas* petition, as he is required to do under the exhaustion doctrine. *See Wagner v. Smith*, 581 F.3d 410, 414-15 (6th Cir. 2009). Therefore, because Lenoir can no longer appeal this issue in the state courts, Ground Two is procedurally defaulted. *See In re Abdur'Rahman*, 392 F.3d at 186-87.

As "cause" for his procedural default of Ground Two, Lenoir asserts ineffective assistance of appellate counsel. He argues that his appellate counsel erred in not bringing this claim on direct appeal, the same argument he raises in Ground Four.[5] As discussed with regard to Ground One, attorney error amounting to ineffective assistance of counsel can constitute cause to excuse a procedural default, unless the ineffective assistance of appellate counsel claim is also procedurally barred. *Edwards v. Carpenter*, 529 U.S. 446, 450-52 (2000). Because Lenoir properly preserved the ineffective assistance of appellate counsel claim and sub-claim in his 26(B) application, the Court will consider whether it constitutes cause. However, to excuse the procedural default, his

_____

[5]The same attorney represented Lenoir throughout his state proceedings: on direct appeal to the Ohio Court of Appeals and the Ohio Supreme Court, on his post-conviction petition, and on appeal of the denial of his post-conviction petition to the Ohio Court of Appeals and the Ohio Supreme Court.

ineffective assistance of appellate claim must have merit, which it does not. *See Davie*, 547 F.3d at 312.

To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-part *Strickland v. Washington* test -- demonstrating that his counsel's performance was deficient and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because there is "a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance," to meet the "deficiency" prong, the defendant must demonstrate that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688-89. To satisfy the "prejudice" prong, "[t]he defendant must show that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The Court of Appeals, in determining that Lenoir's ineffective assistance of appellate counsel had no merit, stated:

> Defendant argues that his appellate counsel was ineffective for failing to raise two issues on appeal: (1) that Defendant's trial counsel performed deficiently by failing to use prior witness statements, rebuttal witnesses and other available material to impeach the State's key witnesses, and (2) Defendant's right to due process and a fair trial was violated by the unjustifiable delay between commission of this crime and Defendant's indictment.
>
> The two prong analysis found in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2 674, is the appropriate standard to assess whether Defendant has raised a genuine issue as to ineffective assistance of appellate counsel, in his request to reopen under App. R. 26(B). *State v. Hill*, 90 Ohio St.3d 571, 2001-Ohio-20. To show ineffective assistance, Defendant must prove that counsel was deficient for failing to raise the issues he now presents, and that there was a reasonable probability of success had he presented those claims on appeal. *Id.* To justify reopening his appeal, Defendant bears the burden of establishing that there is a genuine issue as to whether he has a colorable claim of ineffective assistance of counsel on appeal. *Id.*; *State v. Spivey* (1998), 84 Ohio St.3d 24.
>
> <u>Ineffective Assistance of Trial Counsel</u>
>
> Defendant argues that his trial counsel did not adequately cross-examine the State's three key witnesses and impeach their credibility using prior inconsistent statements and other available materials. The trial record refutes this claim. A

review of the cross-examination of Kirby Peterson and Aisha Whatley, eyewitnesses to the murder, and Latonia Adkins, Defendant's former girlfriend to whom he admitted committing the murder, reveals that Defendant's trial counsel thoroughly cross-examined these witnesses. Counsel emphasized prior inconsistent statements by these witnesses that contradicted their trial testimony, pointed out possible bias, and highlighted discrepancies in their testimony. Counsel also emphasized that some of the State's witnesses did not see who fired the shots that killed Patty Davis, and counsels suggested that the witness's testimony was not credible because it was contradicted by the testimony of other witnesses or the physical evidence.

In short, counsel was well-prepared for trial and was a forceful advocate for Defendant who challenged the State's evidence and the credibility of the State's three key witnesses. Counsel's performance is not rendered constitutionally deficient merely because the jury chose to believe the State's witness, which they had a right to do. No deficient performance by trial counsel is demonstrated on this record. Accordingly, Defendant's appellate counsel did not perform deficiently by failing to raise on direct appeal a claim of ineffective assistance of trial counsel which had no reasonable probability of success.

*State v. Lenoir*, No. 22239 (Ohio Ct. App. Aug. 27, 2008); (Doc. 11-2, at PAGEID 926-29).

The Court of Appeals' decision was not an objectively unreasonably application of *Strickland v. Washington*. Having reviewed the trial record, the Court agrees that Lenoir's trial counsel adequately cross-examined the State's key three witnesses by emphasizing their prior inconsistent statements, suggesting they had a motive to testify against Lenoir, and pointing out that their testimony was contradicted by the testimony of other witnesses and the physical evidence. (*See* doc. 31-3, at PAGEID 1612-32, 1633-34; doc. 31-4, at PAGEID 1822-94, 1903-06, 2000-23.) Thus, because Lenoir has not proven that his ineffective assistance of appellate counsel claim has merit, he has not excused his procedural default of Ground Two.

Finally, as discussed in Ground One, Lenoir has not established that he is actually innocent to overcome his procedural default. Accordingly, Ground Two should be dismissed.

### D. Ground Three

In Ground Three, Lenoir contends that he suffered substantial prejudice and was denied a

fair trial due to the pre-indictment delay of over eleven years. Specifically, Lenoir argues that the delay allowed the State's witnesses to falsely testify against him and deprived him of presenting exculpatory evidence. The State concedes that Ground Three was exhausted, but claims that Lenoir has greatly expanded his argument in his *habeas* petition.

A pre-indictment delay can amount to a due process violation where the defendant shows "[1] substantial prejudice to his right to a fair trial *and* [2] that the delay was an intentional device by the government to gain a tactical advantage." *United States v. Brown*, 959 F.2d 63, 66 (6th Cir. 1992) (citing *United States v. Lovasco*, 431 U.S. 783 (1977)). Notably, a "loss of memory" does not constitute prejudice. *Payne v. Rees*, 738 F.2d 118, 121-22 (6th Cir. 1984).

In rejecting Lenoir's claim on direct appeal, the Court of Appeals stated:

> Defendant argues that the trial court erred in overruling his motion to dismiss the indictment because the eleven year delay between the murder of Patty Davis and his indictment for that crime violated his right to due process, arguing that he suffered actual prejudice as a result of the delay and that the State's reason for the delay is not justifiable.
>
> The murder of Patty Davis occurred in 1994. Defendant was not indicted for that crime until 2005. In overruling Defendant's Crim. R. 12(C)(1) motion to dismiss the indictment, the trial court concluded, based upon the evidence presented at the hearing on the motion, that the State failed to prosecute the case because the only witness who identified Defendant as the shooter had recanted his testimony before his scheduled grand jury appearance, leaving the State with insufficient evidence to prosecute Defendant.
>
> Defendant argues that the State could have indicted him four years sooner than it did, in 2001, when it learned from Latonia Adkins that Defendant admitted killing Patty Davis at Frisch's. However, the fact that the State did not indict Defendant until 2005, after Peterson and Whatley came forward and provided information that corroborated Adkins' information, demonstrates that the prosecutor deferred seeking an indictment until the State had sufficient evidence to convict Defendant. That does not violate due process; rather, it comports with it. *United States v. Lovasco* (1997), 431 U.S. 783, 97 S. Ct. 2044, 52 L. Ed. 2d 752; *State v. Glasper* (Feb. 21, 1997), Montgomery App. No. 15740, 1997 Ohio App. LEXIS 583. The State's reason for the pre-indictment delay in this case is justifiable and outweighs Defendant's conclusory claim that he suffered actual prejudice.
>
> With respect to Defendant's claim that he suffered actual prejudice,

Defendant asserts that as a result of the delay he was unable to locate witnesses who could testify that he did not shoot Patty Davis. General assertions by the defendant that he is unable to locate unidentified hypothetical witnesses do not satisfy his burden to demonstrate that he suffered actual, substantial prejudice. *State v. Conley* (Aug. 24, 2001), Clark App. No. 01CA0013, 2001 Ohio 1474. Accordingly, because Defendant failed to demonstrate that he suffered actual prejudice, and the State's reason for the pre-indictment delay in this case is justifiable, no due process violation is established.

*State v. Lenoir*, No. 22239 (Ohio Ct. App. Apr. 25, 2008); (Doc. 11-1, at PAGEID 643-45).

The Court of Appeals' decision was not an unreasonable application of *Lovasco*. Even assuming that Lenoir had demonstrated that the eleven-year delay substantially prejudiced him, he nonetheless has failed to show that the State purposely delayed charging him in order to gain a tactical advantage. Lenoir was originally arrested five days after the murder of Patty Davis, and the case was scheduled for a grand jury proceeding seven days after his arrest. (Doc. 31-1, at PAGEID 1428-29.) However, Stanley Williams, the State's sole identification witness, recanted his identification before the grand jury proceeding. (*Id.* at PAGEID 1431; Doc. 31-2, at PAGEID 1485.) Therefore, without any other identification witnesses, the State dismissed the charges. (Doc. 31-2 at PAGEID 1486.)

Over ten years later, new information came to light regarding Lenoir's involvement with the murder of Patty Davis. In March 2005, Kirby Peterson, Lenoir's friend who was at Frisch's the night of the murder, disclosed that he witnessed Lenoir shoot Patty Davis. (*See* doc. 31-4, at PAGEID 1817-19.) Therefore, the Montgomery County sheriff's office began investigating the murder again. Detectives talked with Aisha Hunter Whatley, a customer at Frisch's on the night of the murder, who disclosed that she saw Lenoir shoot Patty Davis, and she made a photo identification of Lenoir in July 2005. (*See id.* at PAGEID 1996-97.) With this new evidence, Lenoir was indicted for Patty Davis's murder on December 2, 2005. (Doc. 11-1, at PAGEID 351.)

Moreover, as the Court of Appeals explained, Lenoir's argument -- that the police should have charged him in 2001 based on Latonia Adkins' statement to the police -- is without merit. As the Supreme Court recognized in *Lovasco*, "prosecutors do not deviate from 'fundamental conceptions of justice' when they defer seeking indictments until they have probable cause to believe an accused is guilty; indeed it is unprofessional conduct for a prosecutor to recommend an indictment on less than probable cause." 431 U.S. at 790-91. Thus, the State properly waited to charge Lenoir with murder until it had sufficient evidence to do so.

In sum, Lenoir failed to show how the government purposely delayed his case to gain a tactical advantage over him, as required by *Lovasco*. *See Brown*, 959 F.2d at 66. Accordingly, the Ohio Court of Appeals' decision -- that the eleven-year pre-indictment delay did not violate Lenoir's due process rights -- was not an unreasonable application of clearly established federal law. Therefore, Ground Three should be dismissed.

### E. Ground Four

In Ground Four, Lenoir brings an ineffective assistance of appellate counsel claim, arguing his counsel erred when he raised the ineffective assistance of trial counsel claim in his post-conviction petition, rather than on direct appeal. The Court examined this claim in Ground Two and concluded that it has no merit.

Additionally, Lenoir claims that his appellate counsel was ineffective for not fully developing his pre-indictment delay claim on direct appeal. He asserts that his counsel merely made general assertions and did not present any supporting evidence.

The Court addressed the factual underpinnings of this sub-claim in Ground Three. Taking

into account all of Lenoir's arguments in his *habeas* petition, the Court determined that the sub-claim had no merit. Thus, even if his appellate counsel should have developed the argument more fully on direct appeal, Lenoir was not prejudiced by this error. There is no reasonable probability that he would have prevailed anyway, *see Strickland*, 466 U.S. at 694, given he did not establish that the government purposely delayed charging him in order to gain a tactical advantage, as required by *Lovasco*. *See Brown*, 959 F.2d at 66. If a petitioner fails to meet prejudice prong, the Court need not consider the deficiency prong of *Strickland*. *See United States v. Hynes*, 467 F.3d 951, 970 (6th Cir. 2006). Therefore, Ground Four should be dismissed.

### F. Ground Five

Ground Five is a catch-all argument. Lenoir makes general assertions that he was denied a fair trial and there was a miscarriage of justice, and alleges that there was a conspiracy between his attorneys and the prosecution to convict him with false testimony. The Court has already addressed most of the specific arguments Lenoir makes in Ground Five. The only new argument is an ineffective assistance of counsel claim based on his appellate counsel's failure to timely raise an ineffective assistance of trial counsel claim in his Criminal Rule 33 motion for a new trial. Specifically, Lenoir contends that he asked his counsel to include the ineffective assistance claim in the first motion for a new trial, but counsel refused to do so. His attorney subsequently filed a second motion for a new trial, including the claim, but the ineffective assistance claim was denied as time barred. (*See* doc. 11-1, at PAGEID 449-65.)

Although Lenoir has not exactly framed Ground Five as an ineffective assistance of appellate counsel claim, the Court will construe his petition liberally and view it as such. Nonetheless, the Court finds this claim to be without merit because Lenoir cannot show that, absent his attorney's

error, the outcome of his case would have been different, as required under the prejudice prong of *Strickland*, 466 U.S. at 694. Lenoir's appellate counsel raised comprehensive ineffective assistance of trial counsel claims in his direct appeal (doc. 11-1, at PAGEID 500-41), and in his state petition for post-conviction relief (doc. 11-2, at PAGEID 961-81).

In both cases, the state courts addressed the claims on the merits and concluded they lacked merit. (*See* doc. 11-1, at PAGEID 627-45; doc. 11-2, at PAGEID 1004-30.) The granting of a motion for a new trial is "an extraordinary measure which should be used only when the evidence presented weighs heavily against the conviction." *State v. Samatar*, 787 N.E.2d 691, 700 (Ohio Ct. App. 2003). Therefore, given that the state courts denied these claims on the merits, and the high standard for obtaining a new trial, there is no reasonable probability that Lenoir would have succeeded, even had his counsel timely raised the ineffective assistance of trial counsel arguments in the motion for a new trial. Because Lenoir has failed to meet the prejudice prong of *Strickland*, 466 U.S. at 694, his ineffective assistance of counsel claim fails. As the remaining claims in Ground Five have already been denied, Ground Five should be dismissed.

### III. RECOMMENDATION

It is therefore **RECOMMENDED** that Lenoir's § 2254 petition for a writ of *habeas corpus* be **DENIED** with prejudice and this case be **TERMINATED** on the Court's docket.

November 14, 2011                                    s/ **Michael J. Newman**
                                                     United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).